[Cite as *Nalluri v. Jones*, 2020-Ohio-4280.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Anil C. Nalluri, M.D.,                                    :

      Plaintiff-Appellant,                        :

                                   No. 19AP-779

v.                                                          :        (C.P.C. No. 17CV-11099)

Eric Jones et al.,                                        :        (REGULAR CALENDAR)

      Defendants-Appellees.                       :

---

D E C I S I O N

Rendered on September 1, 2020

---

**On brief:** *Hollingsworth & Washington, LLC*, and *Jonathan Hollingsworth*, for appellant.

**On brief:** *Anspach Meeks Ellenberger LLP*, and *David A. Herd*, for appellees.

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, P.J.

{¶ 1} Plaintiff-appellant, Anil C. Nalluri, M.D., appeals the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Eric Jones ("Jones") and Jones Law Group.[1] For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant was indicted on March 15, 2012 for workers' compensation fraud, theft, and tampering with records. He engaged an attorney to represent him in the criminal matter, and on December 13, 2012, entered a plea deal with the Ohio Bureau of Workers'

---

[1] When referenced together, Eric Jones and Jones Law Group will be referred to as appellees. When referenced individually, Eric Jones will be referred to as "Jones."

Compensation ("BWC").  Pursuant to the plea deal, the criminal charges were dropped from a fifth-degree felony to a first-degree misdemeanor, and appellant agreed to reimburse the cost of the BWC's investigation.

{¶ 3}  On January 7, 2013, appellant signed a contract retaining appellees to represent him "with respect to any issues raised by the State Medical Board of Ohio, issues related to [appellant's] practice to practice medicine in Ohio, and any credentialing or professional privilege matters or other issues mutually agreed upon by Client and Attorney."  (June 21, 2019 Mot. for Summ. Jgmt., Ex. A at 1.)  Appellant agreed to pay appellees a retainer of $4,125 to be applied to the first 15 hours of appellees' time and expenses.

{¶ 4}  On December 17, 2013, appellant signed a new engagement letter retaining appellees to represent him "with respect to any issues raised by the State Medical Board of Ohio, issues related to [appellant's] practice to practice medicine in Ohio, and any credentialing, or professional privilege matters, criminal matters or other issues mutually agreed upon by Client and Attorney."  (July 26, 2019 Memo. in Opp., Ex. B at 9.)  Appellant agreed to pay appellees "a flat fee of $10,000 per month in January 2014 and $15,000 per month beginning in March 2014 until the conclusion of representation in all pending matters."  (Memo. in Opp., Ex. B at 9.)

{¶ 5}  On June 23, 2014, appellant e-mailed Jones a letter expressing his dissatisfaction with appellees' representation.  Specifically, appellant asserted he was in a worse position than he had been prior to appellees' representation, that Jones made assurances and false promises that he did not follow through on, and Jones took advantage of him and grossly overbilled for services that were not rendered.  Appellant asked Jones for an itemized bill accounting for the services paid for by appellant.

{¶ 6}  Jones e-mailed appellant back on June 30, 2014 asserting the fee structure was changed from hourly billing to a flat monthly fee at appellant's request, and the outcome achieved was one that appellant had viewed favorably at the start of the representation.  Jones further stated he would consider the representation terminated unless he heard from appellant the following day. It is undisputed that Jones' representation of appellant terminated at that time and that appellant paid appellees $163,961 over the course of the 18-month representation.

{¶ 7}   Appellant filed a grievance with the Columbus Bar Association ("CBA") on March 31, 2015 alleging appellees charged excessive fees.  In response to the grievance, Jones provided the CBA with over 2,600 pages of documents, including reconstructed billing statements.  On February 9, 2017, the CBA determined that Jones' fees did not violate Rule 1.5 based on the length and scope of Jones' representation and the fact that the flat fee agreement was created at appellant's request.  The CBA investigation also determined that Jones provided appellant with competent representation.  Therefore, the CBA dismissed appellant's grievance.  Appellant appealed to the Supreme Court of Ohio's disciplinary counsel, which also found no ethical violation.[2]

{¶ 8}   Appellant then filed a complaint in the Franklin County Court of Common Pleas on December 15, 2017 alleging breach of contract, rescission, unjust enrichment, fraud, negligent misrepresentation, and piercing the corporate veil.  Appellant claimed appellees breached both contracts by "failing to provide the required legal services and by charging legal fees that were grossly excessive and unreasonable under the circumstances and failing to act in good faith."  (Dec. 15, 2017 Compl. at ¶ 37.)  Appellant asserted that rescission was warranted because the terms in the contracts provided for fees that were so grossly excessive under the circumstances, and in relation to the services actually rendered, as to violate the public policy of the state of Ohio.  Appellant claimed appellees were unjustly enriched because appellees received $163,961 "without having rendered the agreed upon legal services" at appellant's expense and, "[u]nder the circumstances and in relation to the services actually performed by [appellees], it is unjust to allow [appellees] to retain the benefit without payment to [appellant]."  (Compl. at ¶ 44, 46.)  Appellant claimed appellees committed fraud by: representing they would perform certain services even though they had no intention of doing so and instead intended to engage another attorney to perform said services; representing that Jones did in fact perform certain services to induce appellant to pay them; intentionally misleading appellant into retaining another attorney; and intending to mislead appellant "so that [appellant] would pay them exorbitant and

---

[2] The Columbus Bar Association filed disciplinary complaints against the two other attorneys who billed appellant for legal services in the underlying matter.  As a result of these actions, attorney William M. Midian returned the entire $17,500 in fees paid to him by appellant and attorney David P. Rieser was ordered to return $50,000 of the fees paid to him by appellant.  *See Columbus Bar Assn. v. Rieser*, 153 Ohio St.3d 645, 2018-Ohio-3860, ¶ 26, and *Columbus Bar Assn. v. Midian*, 154 Ohio St.3d 135, 2018-Ohio-3908, ¶ 6 (attached to appellant's memorandum in opposition to appellees' motion for summary judgment as Ex. C).

unreasonable fees."  (Compl. at ¶ 54.)  As for the claim for negligent misrepresentation, appellant asserted appellees failed to exercise reasonable care in determining the accuracy of information conveyed to appellant including appellees' intention to perform services for appellant as opposed to engaging outside counsel, the amount of services actually rendered by appellees, and the actual cost of service rendered by appellees.  Finally, appellant claimed the corporate veil is pierced since Jones controlled and treated the finances of appellant in a way that involved fraud, self-dealing, deceit, and misrepresentation.

{¶ 9}  Appellees moved for summary judgment on all claims, arguing appellant's complaint comprised a claim for legal malpractice that is time-barred under the one-year statute of limitations.  Appellant filed a memorandum in opposition asserting the six claims listed in the complaint arose out of appellees' "intentional conduct in defrauding [appellant] in connection with payment for legal services that were either never rendered, or excessively overcharged"—not professional negligence.  (Memo. in Opp. at 1.)

{¶ 10} The trial court issued a judgment on November 7, 2019 granting appellees' motion and entering judgment for appellees.  The trial court determined that because all of appellant's claims arose from the manner in which appellees represented appellant, the complaint stated a single claim for relief in legal malpractice which was governed by the one-year statute of limitations in R.C. 2305.11(A).  Because the evidence showed that the one-year statute of limitations for malpractice began to run in June 2014 when appellant e-mailed appellees indicating his dissatisfaction with his representation or, at the latest, in March 2015 when appellant filed his grievance with the CBA, the trial court concluded appellant's claim was barred by R.C. 2305.11(A), as a matter of law.  Regarding the fraud claim, the trial court found alternatively that summary judgment was appropriate because there were "no allegations, let alone evidence, that [appellees] committed the alleged fraudulent activity for personal gain."  (Nov. 7, 2019 Decision at 11.)

{¶ 11} Appellant filed a timely appeal.

## II.  ASSIGNMENTS OF ERROR

{¶ 12} Appellant appeals and assigns the following two assignments of error for our review:

> [1.] The trial court erred in applying the one year statute of limitations applicable to a legal malpractice claim pursuant to R.C. 2305.11(A) to Plaintiff's claims against Defendants.

[2.] The trial court erred in granting summary judgment in favor of Defendants.

## III.  STANDARD OF REVIEW

{¶ 13} Summary judgment under Civ.R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 629 (1992), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978). The moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the nonmoving party has no evidence to prove its case. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Rather, the moving party must point to some evidence that affirmatively demonstrates the nonmoving party has no evidence to support each element of the stated claims. *Id.* "[I]f the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Id.*

{¶ 14} An appellate court's review of summary judgment is de novo. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29. Thus, we conduct an independent review of the record and stand in the shoes of the trial court. *Abrams v. Worthington*, 169 Ohio App.3d 94, 2006-Ohio-5516, ¶ 11 (10th Dist.). Our review grants no deference to the trial court's determination. *Zurz v. 770 West Broad AGA, LLC*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

## IV.  LEGAL ANALYSIS

### A.  Assignments of Error

{¶ 15} Because appellant's assignments of error are interrelated, we will consider them together. In his assignments of error, appellant argues the trial court erred in applying the one-year limitations period in R.C. 2305.11(A) because his claims do not sound in legal malpractice. We disagree.

{¶ 16} "The term 'malpractice' refers to professional misconduct, *i.e.*, the failure of one rendering services in the practice of a profession to exercise that degree of skill and

learning normally applied by members of that profession in similar circumstances."
(Emphasis sic.) *Strock v. Pressnell*, 38 Ohio St.3d 207, 211 (1988), citing 2 Restatement of
the Law 2d, Torts, Section 299(A) (1965). The elements of a claim for malpractice under
Ohio law are: (1) an attorney-client relationship giving rise to a duty; (2) a breach of that
duty and a failure to conform to the standard required by law; and (3) a causal connection
between the conduct complained of and the resulting damage or loss. *Vahila v. Hall*, 77
Ohio St.3d 421, 427 (1997).

{¶ 17} Whether a complaint against an attorney asserts a single claim for legal
malpractice is determined from the "substance" or "gist" of the complaint rather than the
form of the pleading or procedure. *Nichter v. Shamansky*, 10th Dist. No. 14AP-811, 2015-
Ohio-1970, ¶ 23; *White v. Ohio Pub. Defender*, 10th Dist. No. 19AP-243, 2019-Ohio-5204,
¶ 11. The gist of a complaint sounds in malpractice when the allegations focus on the
manner in which the attorney represented the client. *Creech v. Gaba*, 10th Dist. No. 15AP-
1100, 2017-Ohio-195, ¶ 19-20; *Muir v. Hadler Real Estate Mgt. Co.*, 4 Ohio App.3d 89, 90
(10th Dist.1982). It does not matter whether the professional misconduct is expressed in
terms of breach of contract or tort. *Roberts v. Hutton*, 152 Ohio App.3d 412, 2003-Ohio-
1650, ¶ 53 (10th Dist.); *Muir* at 90. "When the gist of a complaint sounds in malpractice,
the other duplicative claims, even those labeled as fraud and breach of contract, are
subsumed within the legal-malpractice claim." *Dottore v. Vorys, Sater, Seymour & Pease,
L.L.P.*, 8th Dist. No. 98861, 2014-Ohio-25, ¶ 35. "Malpractice by any other name still
constitutes malpractice." *Muir* at 90.

{¶ 18} Appellant argues his claims should not be subsumed into a legal malpractice
claim because not all billing-related claims against attorneys sound in legal malpractice.
This court has stated, however, "[a] complaint concerning the billing of fees arises out of
the manner in which the client was represented within the attorney-client relationship."
*Creech* at ¶ 11. As we noted in *Creech* at ¶ 11, this court and others have found a wide range
of disputes involving billing and fees to constitute claims for legal malpractice, including

some framed as the attorney overcharging a client or billing excessive fees,[3] refusing to refund retainers,[4] erroneously or fraudulently billing the client,[5] and failing to provide adequate or accurate accounting to support the fees billed.[6]  Thus, it is well-settled law in Ohio that legal malpractice includes the failure to perform adequate legal services or even overcharging the client.  *Nichter*, 2015-Ohio-1970, at ¶ 24.

{¶ 19} Appellant relies primarily on the decision of the Eighth District Court of Appeals in *Dzambasow v. Abakumov*, 8th Dist. No. 86021, 2005-Ohio-6719, as support for his contention that his claims of breach of contract, fraud, and unjust enrichment should not be subsumed by the claim for legal malpractice.  *Dzambasow* is distinguishable on its facts.

{¶ 20}  In *Dzambasow,* an attorney contracted with the client to represent him in a criminal matter and insisted on a sizeable, non-refundable retainer.  Immediately on embarking on the attorney-client relationship, the attorney farmed out all the legal work to another attorney and insisted that the client execute a written fee agreement providing for additional fees.  In the client's subsequent civil action against the attorney, the client alleged

---

[3] *See, e.g., Nichter* at ¶ 24 (finding plaintiff's allegation that attorney overcharged him to arise out of the manner the attorney represented him and therefore breach of contract and unjust enrichment claims were properly subsumed within a legal malpractice claim); *Wilkerson v. O'Shea*, 12th Dist. No. CA2009-03-068, 2009-Ohio-6550, ¶ 13, 18 (finding allegation that attorneys overcharged plaintiff for their legal services sounded in legal malpractice); *Rosenberg v. Atkins*, 1st Dist. No. C-930259 (Oct. 5, 1994) (finding overcharging a client for litigation expenses to sound in legal malpractice); *Vorys, Sater, Seymour & Pease LLP v. IP of A Columbus Works 1, LLC*, S.D.Ohio No. 2:12-cv-01072 (June 5, 2013) (finding allegation that attorney billed for unnecessary work that was not beneficial to the client to be subsumed within a legal malpractice claim); *Creech* at ¶ 7-9 (allegation that attorney overcharged client above an agreed flat fee to be subsumed into legal malpractice claim where the claims regarding fees actually alleged the attorney failed to perform satisfactory work for such fee).

[4] *See, e.g., Nichter* at ¶ 24 (finding plaintiff's allegation that attorney failed to refund a portion of a retainer to be a part of legal malpractice claim rather than separate breach of contract or unjust enrichment claims); *Heuker v. Roberts, Kelly & Bucio, LLP*, 3d Dist. No. 17-13-09, 2013-Ohio-3987, ¶ 25 (finding failing to refund money from a sale of land used to pay legal fees is a legal malpractice claim); *Triplett v. Benton*, 10th Dist. No. 03AP-342, 2003-Ohio-5583, ¶ 4, 7 (finding allegation that attorney failed to represent him until the final judgment and asking for return of prepaid fees to constitute claims for legal malpractice).

[5] *See, e.g., Dottore* at ¶ 45 (finding "vague allegations of fraudulent billing" fall within general rule that complaints concerning the billing of fees arises out of the manner in which the client was represented within the attorney-client relationship); *Byrd v. Peden*, 10th Dist. No. 99AP-111 (Sept. 28, 1999) (finding billing errors by a lawyer is legal malpractice); *Lloyd v. Ernst*, 12th Dist. No. CA2018-05-058, 2019-Ohio-756, ¶ 25 (finding fraud claim to be subsumed into legal malpractice claim where substance of claim relied on errors plaintiff identified in the final invoice he was provided by his former attorney and plaintiff failed to allege attorney committed billing error for personal gain).

[6] *See, e.g., Wilkerson* at ¶ 13, 18 (finding allegation that attorneys failed to provide an adequate accounting of the fees they charged sounded in legal malpractice); *Rosenberg* (finding failure to provide a satisfactory accounting of all litigation expenses, court costs, and settlement proceeds sounded in legal malpractice).

the attorney entered into a contract with them, charged excessive fees, charged a non-refundable retainer, and failed to provide substantial legal services. The complaint sought damages for breach of contract, fraud, rescission, and unjust enrichment. The trial court dismissed the action on finding the statute of limitations for legal malpractice had lapsed.

{¶ 21} The issue for the Eighth District was whether the complaint was barred by the one-year limitations period applicable to legal malpractice. The Eighth District determined "[t]he complaint does not involve any allegation that [the attorney] exercised any legal judgment on their behalf or neglected a legal matter they entrusted to him." *Id.* at ¶ 18. Accordingly, the Eighth District determined the action sounded primarily in breach of contract, not legal malpractice.

{¶ 22} *Dzambasow* appears to carve out an exception to the general rule where the attorney accepts a non-refundable retainer, performs little or no legal work for the client, and then demands the clients execute a written fee agreement providing for additional fees. Here, there is no dispute that appellees submitted volumes of legal work product to the CBA in defense of appellant's complaint. Though we are not bound by the CBA opinion in this matter, it is impermissible to conclude, in light of such evidence, that appellee performed little or no legal work for appellant. Thus, unlike the attorney in *Dzambasow*, appellees unquestionably performed substantial legal work for appellant over the course of the representation, albeit for allegedly exorbitant fees.[7]

{¶ 23} Additionally, unlike *Dzambasow*, the vast majority of the allegations in the verified complaint relate to the manner in which appellees represented appellant on a number of legal matters.[8] *Dzambasow* is inapplicable to the facts as alleged in the verified complaint because the substance of the complaint sounds in legal malpractice.

---

[7] This court has held that a trial court may consider the allegations of a verified complaint as evidentiary material when considering a motion for summary judgment. *Columbus v. Bahgat*, 10th Dist. No. 10AP-943, 2011-Ohio-3315, ¶ 16.

[8] Appellant's July 26, 2019 memorandum in opposition identifies the following overpayment to appellees:

- More than $3,000 for review and research of psychiatry billing matters unrelated to the matter before the State Medical Board, given that the matter before the State Medical Board of Ohio was a disciplinary matter based on the criminal plea. * * *

{¶ 24} Appellant also contends the decision of this court in *Creech* supports his argument in this case. Once again, we disagree.

{¶ 25} In *Creech*, this court held an attorney was entitled to summary judgment on a client's breach of contract claims arising out of an alleged flat-fee agreement because the arguments underlying all of the client's claims related to the attorney's allegedly incompetent professional representation and were actually legal malpractice claims for which the client failed to present expert testimony. In *Creech*, the client alleged that the attorney "never outlined exactly what she would do for the alleged flat fee; failed to secure his release for the flat fee; failed to pursue his ideas for obtaining resentencing for that flat fee; used the alleged flat fee to file pleadings and appeals that were meritless, frivolous, and unsuccessful; lied to appellant regarding her intended representation in order to obtain fees in addition to the alleged flat fee; and continued to refuse to act or file more appropriate motions on his behalf under the alleged flat-fee agreement." *Id.*, 2017-Ohio-195, at ¶ 15. This court determined all of these allegations sounded in legal malpractice.

{¶ 26} In *Creech,* this court noted that "*Dzambasow* suggests that a fee dispute between a client and an attorney may be deemed a breach of contract action instead of a malpractice action [because] the * * * attorney * * * performed little to no legal work for the

---

- $907.50 for allegedly conducting research on September 6, 2013, related to "requirements and cases for withdrawing guilty plea" even though Dr. Nalluri was referred to Attorney Martin Midian by Defendant Jones for that purpose [and] repeat[ing] the same research on September 14, 2013 with a charge of 4.80 hours totaling $1,320.00. * * *

- $4,000 to locate a lawyer in Pennsylvania to advise Dr. Nalluri, someone Jones represented to Dr. Nalluri that he was previously acquainted with prior to the referral. * * *

- [An undisclosed amount] [f]or calling the Chicago Board of Psychiatry regarding Dr. Nalluri's license and certification status on March 2, 2014, a Sunday, even though the Chicago Board of Psychiatry, was not open for business on a Sunday. * * *

- Almost $2,400 for two four-hour telephone conversations with him that did not occur. * * *

- More than $1,000 for two telephone conversations with offices on days that they were closed. * * *

- More than $200 for "drafting and filing" a document that was apparently neither drafted nor filed by them. * * *

(Emphasis omitted.) (Memo. in Opp. at 7-8.)

plaintiffs-clients in the two cases for which they hired him." *Creech* at ¶ 14. The *Creech* court did not specify the type of billing error that may be deemed a breach of contract action instead of a malpractice action. Moreover, as earlier noted, the facts alleged in the verified complaint are eminently distinguishable from those addressed by the Eighth District in *Dzambasow* and, in our view, the rule of law set out in *Dzambasow* is inapplicable herein. Because the allegations against appellees in this case are more similar to those leveled against the attorney in *Creech,* the same result is required.

{¶ 27} Appellant's reliance on the *Divine Tower Internatl. Corp. v. Kegler, Brown, Hill & Ritter Co., L.P.A.*, S.D.Ohio No. 2:04-cv-494 (Sept. 4, 2007), is also misplaced. In that case, an attorney "fraudulently charged [the plaintiff] for services it performed for someone else." *Id.* The Southern District determined that the attorney conduct in that case sounded in fraud and unjust enrichment, not legal malpractice. Here, the verified complaint does not contain any allegations of the type involved in the *Divine Tower* case. Thus, *Divine Tower* does not support appellant's argument.

{¶ 28} In our view, appellant has attempted through clever pleading to circumvent the applicable statute of limitations. Because malpractice by any other name still constitutes malpractice, we agree with the determination of the trial court that appellant's complaint was untimely filed. *Muir*, 4 Ohio App.3d at 90.

{¶ 29} Appellant indeed concedes that "the gist of [his] complaint is that Defendants entered into a contract with him, misrepresented services rendered, charged excessive fees, and failed to provide the equivalent value of services." Appellant's Brief at 29. The well-established guiding precedents mark this sort of complaint as one in malpractice.

{¶ 30} Appellant argues alternatively that appellees' conduct in conspiring with two other attorneys to defraud appellant gives rise to claim for civil conspiracy, which is not subsumed by legal malpractice. Appellant's verified complaint, however, did not allege civil conspiracy. Nor did appellant argue in the trial court that his verified complaint raised such a claim. Because appellant did not raise the conspiracy claim in the trial court, we decline to address this issue for the first time on appeal. *Quaye v. N. Mkt. Dev. Auth., Inc.*, 10th

Dist. No. 15AP-1102, 2017-Ohio-7412, ¶ 28 ("An appellant cannot change the theory of his case and present new arguments for the first time on appeal.").[9]

{¶ 31} Appellant further contends the trial court erroneously concluded appellant's fraud claim failed, as a mater of law, because appellant did not produce evidence appellees committed the alleged fraud for personal gain. Having determined, however, that the trial court did not err when it concluded that appellant's purported fraud claim was subsumed by the legal malpractice claim and barred by the applicable statute of limitations, we need not address this argument.

{¶ 32} For the foregoing reasons, appellant's assignments of error are overruled.

## V. CONCLUSION

{¶ 33} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

NELSON, J., concurs.
DORRIAN, J., dissents.

DORRIAN, J., dissenting.

{¶ 34} I respectfully dissent.

{¶ 35} As noted by the majority, in *Creech v. Gaba*, 10th Dist. No. 15AP-1100, 2017-Ohio-195, we stated that generally, "[a] complaint concerning the billing of fees arises out of the manner in which the client was represented within the attorney-client relationship." *Creech* at ¶ 11. However, at the same time, in *Creech*, we left room for the possibility that some cases, "such as ones relating solely to the perfunctory task of billing," could stand apart from legal malpractice. *Id.* at ¶ 12. We also suggested that a breach of contract claim independent from legal malpractice may be warranted in cases where the defendant attorney performed "little to no legal work," but instead hired and passed the case along to another attorney, as in *Dzambasow v. Abakumov*, 8th Dist. No. 86021, 2005-Ohio-6719. *Creech* at ¶ 14. I believe that some of the claims made by appellant would fall within the

---

[9] To the extent that appellant contends that his restyled claims were not subsumed by legal malpractice because some of the legal services performed by appellee predated the written fee agreement, the Supreme Court has found that an attorney-client relationship can be formed by implication based on "the conduct of the parties and the reasonable expectations of the person seeking representation." *Cuyahoga Cty. Bar Assn. v. Hardiman*, 100 Ohio St.3d 260, 2003-Ohio-5596, syllabus. On this record, there can be no doubt that an attorney-client relationship existed.

type of exceptions contemplated in *Creech*, *Dzambasow*, and *Divine Tower Internatl. Corp. v. Kegler, Brown, Hill & Ritter Co. L.P.A.*, S.D.Ohio No. 2:04-cv-494 (Sept. 4, 2007).

{¶ 36} Appellant alleged numerous claims in his complaint, including that appellees: failed to provide legal services required under contract; charged legal fees that were grossly excessive and unreasonable under the circumstances, including but not limited to *billing appellant* for work performed prior to formation of the attorney-client representation, duplicative work, and *work that was not performed*; failed to act in good faith; received $163,961 without having rendered the agreed upon legal services; represented they would perform certain services even though they had no intention of doing so and instead intended to engage another attorney to perform said services; represented that Jones did in fact perform certain services to induce appellant to pay them; mislead appellant into retaining another attorney; intended to mislead appellant "so that [appellant] would pay them exorbitant and unreasonable fees"; and failed to exercise reasonable care in determining the accuracy of information conveyed to appellant including appellees' intention to perform service for appellant as opposed to engaging outside counsel, the amount of services actually rendered by appellees, and cost thereof. (Compl. at 13.) Appellant also alleged that Jones controlled and treated the finances of appellant in a way that involved fraud, self-dealing, deceit, and misrepresentation.

{¶ 37} I would agree with appellant that not all of the allegations in his complaint rest in the manner in which appellant was represented. The allegations here concerning appellees retaining payment for services they never provided do not relate to appellees' allegedly incompetent professional representation under the flat-fee contract. Rather, I would find these allegations to be more akin to the exceptions cited in *Creech*, *Dzambasow*, and *Divine Tower* that lack connection to professional judgment and competent representation. Accordingly, I would find the trial court erred in deeming appellant's entire complaint one claim for legal malpractice. Specifically, I would find appellant's allegations concerning appellees' billing appellant for services appellees never performed did not arise out of the manner in which appellant was represented within the attorney-client relationship. Therefore, the claims asserted in appellant's complaint based on these allegations should not have been subsumed into a legal malpractice claim and thereafter barred under the one-year statute of limitations stated in R.C. 2305.11(A). Therefore, I

would sustain the assignments of error and remand to the trial court to vacate summary judgment in favor of appellees on those particular claims on grounds of statute of limitations.

————————————