[Cite as *Blank v. Bluemile, Inc.*, 2021-Ohio-2002.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Todd Blank, :

    Plaintiff-Appellant, :

                  No. 20AP-200

v. : (C.P.C. No. 14CV-5591)

Bluemile, Inc. et al., : (REGULAR CALENDAR)

    Defendants-Appellees. :

D E C I S I O N

Rendered on June 15, 2021

**On brief:** *Wolinetz & Horvath, LLC, Barry H. Wolinetz*, and *Adam C. Sims*, for appellant. **Argued:** *Barry H. Wolinetz.*

**On brief:** *Kegler Brown Hill + Ritter, Jason H. Beehler*, and *Sasa Trivunić*, for appellees. **Argued:** *Jason H. Beehler.*

APPEAL from the Franklin County Court of Common Pleas

PER CURIAM.

{¶ 1} Plaintiff-appellant, Todd Blank, appeals from a judgment of the Franklin County Court of Common Pleas in favor of defendants-appellees, Bluemile, Inc. et al. For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On May 28, 2014, appellant filed a complaint against appellees, Bluemile, Inc., Thomas James Busic, Jr., Michael Marlowe, David A. Ferris, and Wideopenwest Finance, LLC ("WOW"), alleging claims for unjust enrichment, alter ego, fraudulent conveyance, tortious interference, civil conspiracy, monies had and received, fraud, conversion, breach of contract, and promissory estoppel.

{¶ 3}    The material facts in the case are largely undisputed but the parties disagree on the legal significance of those facts as they pertain to the issues of standing and the statute of limitations.  Prior to 2005, appellant, Bourne, and Ferris owned an entity known as IPOutlet, LLC ("IPO").  Appellant and Bourne each owned 47.5 percent of the shares in IPO, and Ferris owned the remaining 5 percent of the shares.  In 2005, a company known as US Wireless acquired both IPO and MJS Holdings, Inc. ("MJS"), an Ohio corporation owned by Busic and Marlowe.

{¶ 4}    Not long after the purchase was consummated, US Wireless elected to divest itself of IPO and MJS.  Ferris then incorporated Bluemile for the purpose of recovering the assets formerly belonging to IPO and MJS.  To that end, on May 5, 2006, Bluemile entered into a definitive agreement with MJS, Busic, Marlowe, IPO, Ferris, and Bourne.  Appellant, however, was not a party to the definitive agreement.

{¶ 5}    The definitive agreement provides, in relevant part, as follows:

> This Definitive Agreement confirms and effectuates certain transactions, the crux of which involves the sale and transfer by Busic and Marlowe of all issued and outstanding shares of stock in MJS to Bluemile and the sale and transfer by Bourne and Ferris of their entire interests in [IPO] to Bluemile.

(Definitive Agreement at ¶ 2, attached as Ex. A to July 28, 2014 Answer & Counterclaim.) The definitive agreement also provides that "[c]oncurrent with the transaction described herein, Bluemile extended a firm written offer for its cash purchase of the remaining 47.5% ownership interest in [IPO] from [appellant], which offer is under consideration and open for acceptance."  Definitive Agreement at ¶ 7.  Under the terms of the definitive agreement, all of MJS's rights and obligations in customer and vendor accounts transferred to Bluemile but those of IPO were to be transferred to Bluemile only on Bluemile's acquisition of appellant's interest in IPO.   Appellant, however, did not accept Bluemile's offer of $400,000, and he submitted a counteroffer of $500,000.[1]   Bluemile rejected the counteroffer.

{¶ 6}    Even though Bluemile had not yet acquired appellant's interest in IPO, there is no dispute that subsequent to the execution of the definitive agreement, Bluemile took over operations of IPO.  Furthermore, even though Bluemile had yet to acquire appellant's

---

[1] According to appellant's deposition, a counteroffer 0f $500,000 was communicated to appellees in a letter from appellant's counsel dated April 28, 2006.  (Appellant's Aug. 19, 2015 Dep. at 4, 121.)

interest in IPO, on November 30, 2006, appellees Bluemile, MJS, IPO, Busic, and Marlowe executed a settlement agreement and release with US Wireless.[2] The settlement agreement and release memorialized the transfer of all outstanding membership interests in IPO to Bluemile. Bourne executed the settlement agreement on behalf of IPO representing in the document itself that he had the authority to do so. Appellant was not a party to the settlement agreement.

{¶ 7} For a brief period of time in 2006, appellant was employed by Bluemile, but the employment relationship ended acrimoniously later that year.[3] Bourne eventually left Bluemile in 2007; Ferris left the company in 2008. There is no evidence appellant ever personally transferred his 47.5 percent share in IPO to Bluemile or any other person or entity, and there is no evidence appellant received any compensation from Bluemile or any other person or entity for his share of IPO. Appellant has acknowledged Bluemile immediately assumed IPO's business relationships on execution of the settlement agreement, including servicing all customer and vendor accounts.

{¶ 8} In September 2013, Bluemile executed an asset purchase agreement with WOW, whereby WOW purchased Bluemile's assets, including Bluemile's interest in IPO. Appellant commenced an action against appellees in September 2013, but he dismissed the complaint by filing a notice of voluntary dismissal.[4] Appellant refiled the complaint against appellees on May 28, 2014.

{¶ 9} Each of the parties named as defendants in appellant's complaint filed an answer and a counterclaim against appellant. Bluemile also filed a third-party complaint against IPO.[5] The discovery process in the refiled action was extensive, contentious, and time consuming, including depositions of all the principals and voluminous document production. Much of the discovery concerned matters not germane to the judgment giving rise to this appeal.

{¶ 10} On January 31, 2018, appellant moved the trial court for summary judgment as to Count 1 of appellant's second amended complaint alleging unjust enrichment. On that

---

[2] The settlement agreement and release were executed in connection with litigation in the United States District Court for the Western District of Kentucky and in the Franklin County Court of Common Pleas.

[3] The parties disagree as to the timing of appellant's departure and the reason therefor.

[4] Appellee Ferris was not a named defendant to the initial complaint.

[5] On May 5, 2015, the trial court granted the parties' joint motion to consolidate the case with a related case filed by Bourne against appellees. The claims in that case are not the subject of this appeal.

same date, Busic and Marlowe filed their joint motion for summary judgment as to each of appellant's clams against them. Bluemile also filed a motion for summary judgment on January 31, 2018 as to each of appellant's claims against it. Because of the intervening discovery process, the trial court did not hear oral argument on the cross-motions for summary judgment until February 7, 2020.

{¶ 11} On March 6, 2020, the trial court issued a decision and entry granting appellees' motions for summary judgment and denying appellant's motion for summary judgment. The decision contains the finding, pursuant to Civ.R. 54(B), "there is no just reason for delay." (Mar. 6, 2020 Decision & Entry at 20.)

{¶ 12} Appellant timely appealed to this court from the March 6, 2020 judgment.

## II. ASSIGNMENTS OF ERROR

{¶ 13} Appellant assigns the following as trial court error:

> 1. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT DID NOT HAVE STANDING TO BRING A DIRECT CLAIM FOR UNJUST ENRICHMENT AGAINST APPELLEE BLUEMILE, OR, ALTERNATIVELY, FAILED TO PROPERLY PLEAD A DERIVATIVE CLAIM AGAINST APPELLEE BLUEMILE.

> 2. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT'S CLAIM FOR UNJUST ENRICHMENT AGAINST APPELLEE BLUEMILE WAS TIME-BARRED BY THE STATUTE OF LIMITATIONS.

## III. STANDARD OF REVIEW

{¶ 14} "Summary judgment under Civ.R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion." *Nalluri v. Jones*, 10th Dist. No. 19AP-779, 2020-Ohio-4280, ¶ 13, citing *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 629 (1992), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978). The moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory allegations that the nonmoving party has no evidence to prove its case. *Nalluri* at ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Rather, the moving party must point to some evidence that affirmatively demonstrates the nonmoving party has no evidence to support each element of the stated claims. *Nalluri* at ¶ 13. " '[I]f the moving party has

satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.' " *Id.*, quoting *Dresher* at 293.

{¶ 15} An appellate court's review of summary judgment is de novo. *Hill v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 20AP-88, 2021-Ohio-561, ¶ 14, citing *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29. " 'Thus, we conduct an independent review of the record and stand in the shoes of the trial court.' " *Hill* at ¶ 14, quoting *Nalluri* at ¶ 14, citing *Abrams v. Worthington*, 169 Ohio App.3d 94, 2006-Ohio-5516, ¶ 11 (10th Dist.). Our review permits no deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, LLC*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

## IV. LEGAL ANALYSIS

### A. First Assignment of Error

{¶ 16} In appellant's first assignment of error, appellant contends the trial court erred in finding appellant did not have standing to assert a claim for unjust enrichment against appellees in his individual capacity and in further finding appellant failed to plead a derivative claim against appellees on behalf of IPO. We agree with the trial court.

{¶ 17} "Standing" is defined as " '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.' " *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, ¶ 27, quoting Black's Law Dictionary 1442 (8th Ed.2004). "A party must establish standing to sue before a court can consider the merits of a legal claim." *Torrance v. Rom*, 8th Dist. No. 108818, 2020-Ohio-3971, ¶ 23, citing *Ohio Contrs. Assn. v. Bicking*, 71 Ohio St.3d 318, 320 (1994). "To have standing, a party must have a personal stake in the outcome of a legal controversy with an adversary." *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, ¶ 9, citing *Ohio Pyro* at ¶ 27. "The lack of standing may require a court to dismiss an action." *Torrance* at ¶ 23, citing *Thies v. Wheelock*, 2d Dist. No. 2017-CA-8, 2017-Ohio-8605, ¶ 10.

{¶ 18} R.C. 1705.34 provides: "Real and personal property owned or purchased by a limited liability company shall be held and owned in the name of the company. Conveyance of that property shall be made in the name of the company." R.C. 1705.03(A) states that

"[a] limited liability company may sue and be sued." *Photographic Creations, Ltd. v. MTMC Co., LLC*, 10th Dist. No. 16AP-256, 2017-Ohio-2670, ¶ 15. Accordingly, a claimed injury to an Ohio limited liability company must be brought by the corporation itself or in the form of a derivative action. *Adair v. Wozniak*, 23 Ohio St.3d 174 (1986). A shareholder's derivative action is one brought by a shareholder in the name of the corporation to enforce a corporate claim. *Nordquist v. Schwartz*, 7th Dist. No. 11 CO 21, 2012-Ohio-4571, ¶ 19, citing *Weston v. Weston Paper & Mfg. Co.*, 74 Ohio St.3d 377 (1996). In Ohio, shareholder derivative actions are governed by Civ.R. 23.1. *Nordquist* at ¶ 20.[6]

{¶ 19} Because a limited liability company is distinct from its members, an individual member of a limited liability company lacks standing to assert claims individually where the cause of action belongs to the company. *TD Ltd., LLC v. Dudley*, 12th Dist. No. CA2014-01-009, 2014-Ohio-3996, ¶ 16, fn. 2. "The general rule is applicable in cases where the individual is the sole stockholder." (Citations omitted.) *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 603 (6th Cir.1988).

{¶ 20} At the outset of our discussion, we note appellant commenced this action on his own behalf; he did not bring this action as a derivative claim on behalf of IPO. The trial court nevertheless concluded, to the extent appellant asserted a derivative claim, appellees were entitled to judgment as a matter of law due to certain pleading deficiencies.

{¶ 21} Based on our de novo review, we find nothing in the pleadings or the evidence in this case to suggest appellant prosecuted this action as a derivative claim on behalf of

---

[6] Civ.R. 23.1 states that:

> In a derivative action brought by one or more legal or equitable owners of shares to enforce a right of a corporation, the corporation having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors and, if necessary, from the shareholders and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders similarly situated in enforcing the right of the corporation. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders in such manner as the court directs.

IPO.  Appellant's second amended complaint identifies a single plaintiff, "Todd Blank."  The term "derivative action" is not used anywhere in the second amended complaint.

{¶ 22}  Appellant's second amended complaint is not verified as required by Civ.R. 23.1.  Nor does it allege with particularity the efforts, if any, made by appellant to obtain the action he desires from the directors and, if necessary, from the shareholders and the reasons for his failure to obtain the action or for not making the effort, as required both by Civ.R. 23.1 and R.C. 1705.49.  Furthermore, there is no allegation in the complaint and no evidence in the record to support a finding that IPO management is not reserved to its members, which is mandatory whenever a member of a limited liability company commences an action on behalf of the company.  *See* R.C. 1705.49.  IPO's operating agreement, if any, is not in evidence.

{¶ 23}  Appellant cites *Cooper v. Ryan*, 6th Dist. No. L-13-1172, 2014-Ohio-337, for the proposition that, under circumstances where there are only two members of a limited liability company, a court may dispense with the requirement that the complaint in a shareholder's derivative action allege with particularity the effort of the plaintiff to secure commencement of the action by the managers or the reasons for not making the effort.  In that case, the Sixth District affirmed the denial of a motion to dismiss a derivative action alleging the company had been damaged by the other member's breach of the company's operating agreement.  In *Cooper*, the court of appeals noted that "[b]ased on the * * * language [in the complaint], it is clear that appellee is seeking recovery on behalf of the LLC."  *Id*. at ¶ 10.

{¶ 24}  *Cooper* is not binding precedent in this district.  However, even if we were to apply *Cooper* to this case, appellant's second amended complaint and his argument in the trial court make it clear, beyond doubt, that appellant is seeking recovery on his own behalf, not on behalf of IPO.

{¶ 25}  With regard to appellant's standing, on his own behalf, to commence a direct action against appellees, appellant argues he is entitled to do so under the exception articulated by the Supreme Court of Ohio in *Crosby v. Beam*, 47 Ohio St.3d 105 (1989).  Appellees argue the *Crosby* exception is inapplicable in this case.  We agree.

{¶ 26} In *Crosby*, minority shareholders in a close corporation filed an action against appellants, controlling shareholders, officers, and directors alleging appellants

breached a fiduciary duty owed to appellees by improperly expending corporate funds to pay themselves unreasonable salaries and pay their personal expenses. Appellees further alleged that appellants used corporate property for personal enterprise, caused the corporation to purchase life insurance for their benefit, took improper low-interest loans from the corporation, and received trust payments greater to the amount to which appellees were entitled. Appellants filed a Civ.R. 12(B)(6) motion to dismiss the complaint for failure to state a claim arguing that appellees' action could only be brought as a Civ.R. 23.1 shareholder derivative action, and appellees did not have standing to bring a direct action against appellants.

{¶ 27} The trial court dismissed the breach of fiduciary duty claim on concluding appellees should not be permitted to proceed individually against the appellants for breach of fiduciary duty owed by majority shareholders to minority shareholders because the alleged wrongdoing did not destroy appellees' investment for the appellants' benefit or produce special damages peculiar to appellees. In reversing the common pleas court, the Sixth District held compliance with Civ.R. 23.1 was not required because appellees complaint stated a claim for relief personal to appellees.

{¶ 28} The issue before the Supreme Court was whether the appellees had standing to maintain an individual action or whether dismissal was proper because the suit was not instituted as a Civ.R. 23.1 shareholder's derivative suit. *Id.* at 107. Appellants contended that appellees could not maintain a direct action against appellants and that the case should have been brought as a derivative action because the alleged misappropriation of corporate funds directly affected the corporation but only indirectly harmed the appellees – minority shareholders.

{¶ 29} In rejecting appellants' argument, the *Crosby* court discussed the nature of the relationship between minority and majority shareholders in a close corporation:

> Typically, a close corporation is a corporation with a few shareholders and whose corporate shares are not generally traded on a securities market. * * *
>
> * * *
>
> Minority shareholders in a close corporation, denied any share of the profits by the majority shareholder's action, will either suffer a loss or try to find a buyer for their stock. This situation is contrasted with an oppressed minority

shareholder in a large publicly owned corporation who can more easily sell his shares in such a corporation. Generally, there is no ready or available market for the stock of a minority shareholder in a close corporation. This presents a plight for a minority shareholder in a close corporation who can become trapped in a disadvantageous situation from which he cannot be easily extricated. * * *

* * *

Where majority or controlling shareholders in a close corporation breach their *heightened fiduciary duty* to minority shareholders by utilizing their majority control of the corporation to their own advantage, without providing minority shareholders with an equal opportunity to benefit, such breach, absent a legitimate business purpose, is actionable. Where such a breach occurs, the minority shareholder is individually harmed. When such harm can be construed to be individual in nature, then a suit by a minority shareholder against the offending majority or controlling shareholders may proceed as a direct action.

(Emphasis added.) *Id.*, 47 Ohio St.3d at 107-09.

{¶ 30} Because of the unique circumstances that exist in a close corporation setting, the *Crosby* court determined that claims of a breach of fiduciary duty alleged by minority shareholders against shareholders who control a majority of shares in a close corporation and use their control to deprive minority shareholders of the benefits of their investment may be brought as individual or direct actions and are not subject to the provisions of Civ.R. 23.1. *Id.* at 110-11. Under *Crosby*, "[i]f the complaining shareholder is injured in a way that is separate and distinct from an injury to the corporation, then the complaining shareholder has a direct action," allowing that shareholder to sue individually. *Id.* at 107.[7]

{¶ 31} Appellant asks this court to apply the *Crosby* rule to a claim of unjust enrichment brought by a minority shareholder against the majority shareholders in a limited liability company. We are not persuaded *Crosby* should apply here.

{¶ 32} The *Crosby* case involved a minority shareholder in a close corporation and the holding in the case is limited to those particular facts. Here, appellant is one of three

---

[7] One of the justices in the *Crosby* case expressed concern that permitting a direct action by minority shareholders in a close corporation under circumstances where the minority shareholders are not completely "frozen out" from enjoying benefits obtained by the majority shareholders would "amount to repeal of Civ.R. 23.1 as it relates to *all actions* by disgruntled minority shareholders in close corporations." (Emphasis sic.) *Id.* at 111 (Wright, J., concurring in part and dissenting in part).

shareholders in a limited liability company, which is a distinctly different legal entity. Thus, we are hesitant to apply the *Crosby* rule to the circumstances of this case. Moreover, without deciding whether it is permissible to apply *Crosby* to an action brought by a member of a limited liability company, we note the *Crosby* case involved a claim for breach of fiduciary duty brought by minority shareholders in a close corporation against the majority shareholders. Appellant has not asserted a claim for breach of fiduciary against appellees. Nor has appellant alleged that appellees owed him a fiduciary duty.[8] Thus, we are not persuaded *Crosby* applies.

{¶ 33} Appellant claims that *Weston*, 74 Ohio St.3d 377, stands for the proposition that, under *Crosby*, a minority shareholder in a limited liability company may have standing to assert a direct claim against the majority shareholders for unjust enrichment if the minority shareholder can establish that he has suffered an injury separate and distinct from an injury to the corporation. *Weston* does not stand for such a proposition. The *Weston* court did not conclude either that *Crosby* applies to minority shareholders in a limited liability company or that the *Crosby* standing exception applies to a minority shareholder's claim for unjust enrichment. The *Weston* court merely refused to extend the holding in *Crosby* to a minority shareholder's breach of fiduciary duty claim against a corporation with more than 100 stockholders. Thus, the *Weston* case does not support appellant's standing argument in this case.

{¶ 34} For the foregoing reasons, we hold the trial court did not err when it determined appellant did not have standing to assert a claim for unjust enrichment against appellees. Though the trial court granted summary judgment to appellees rather than dismissing the claim, given our disposition of appellant's second assignment of error, we perceive no prejudice to appellant. Appellant's first assignment of error is overruled.

### B. Second Assignment of Error

{¶ 35} In his second assignment of error, appellant argues that the trial court erred when it determined, alternatively, that the statute of limitations barred his unjust enrichment claim against appellees. We disagree.

{¶ 36} The elements of a cause of action for unjust enrichment are: (1) a benefit conferred by the plaintiff on the defendant, (2) knowledge of the benefit by the defendant,

---

[8] Ohio's statute of limitations for a claim for breach of fiduciary duty is four years. R.C. 2305.09(D).

and (3) retention of the benefit by the defendant in circumstances where it would be unjust to do so. *Lundeen v. Smith-Hoke*, 10th Dist. No. 15AP-236, 2015-Ohio-5086, ¶ 51. A claim for unjust enrichment is subject to a six-year limitations period set forth in R.C. 2305.07. *LeCrone v. LeCrone*, 10th Dist. No. 04AP-312, 2004-Ohio-6526, ¶ 20. "Such a claim arises when a party retains money or benefits which, in justice and equity, belongs to another." *Id.*, citing *Ignash v. First Serv. Fed. Credit Union*, 10th Dist. No. 01AP-1326, 2002-Ohio-4395, ¶ 17, citing *Liberty Mut. Ins. Co. v. Indus. Comm.*, 40 Ohio St.3d 109, 110-11 (1988). "The claim accrues on the date when the money or property is wrongly retained." *LeCrone* at ¶ 20, citing *Palm Beach Co. v. Dun & Bradstreet, Inc.*, 106 Ohio App.3d 167, 175 (1st Dist.1995).

{¶ 37} Appellant originally commenced an action against appellees in September 2013, but he dismissed the complaint by filing a notice of voluntary dismissal. Appellant refiled the complaint against appellees within one year on May 28, 2014. Therefore, in order for appellant's unjust enrichment claim to be timely filed, the claim must have accrued no earlier than September 2007.

{¶ 38} The trial court found appellant's claim for unjust enrichment accrued when appellees executed the definitive agreement on May 5, 2006, and the six-year statutory limitations period expired prior to the date appellant filed the original complaint. Appellant claims even though appellees took control of IPO's assets in 2006, the unjust enrichment claim accrued, at the earliest, in 2008. According to appellant, that is when he first discovered appellees no longer intended to pay him for his share of IPO. Appellant maintains that, prior to that time, he had received assurances from appellees that payment for his share of IPO would be forthcoming.

{¶ 39} Appellant's affidavit provides in relevant part:

> Bluemile represented in the [definitive agreement] that it would not take the revenue-producing assets of his company ([IPO]) without first buying me out.

> Thereafter, Defendants continued to represent to me on numerous occasions that they intended to compensate me for my interest in [IPO] and/or its assets.

> As late as 2008, I met with Defendant Busic at the Panera Bread in Easton Town Center, where we continued to negotiate a fair price for my [IPO] interest and/or its assets. During these

> negotiations Defendant Busic represented that the Defendants still intended to pay me for my interest.
>
> At that point I was still under the impression that he and the other Defendants in this matter intended to compensate me for my interest in [IPO] and/or its assets, and in reliance on these representations I decided to not take any legal action against the Defendants.
>
> It was not until the WOW! asset purchase, after which I received nothing, that I became aware the Defendants no longer intended to compensate me for my interest in [IPO] and/or its assets.

(Aff. of Todd Blank at 2, attached as Ex. A to Aug. 28, 2019 Memo. Contra to Bluemile's Mot. for Summ. Jgmt.)

{¶ 40} Though appellant's affidavit states that he was unaware that appellees did not intend to pay him for his interest in IPO until 2013, his argument in the trial court and in this appeal is that the claim accrued some time in 2008, when he discovered that appellees were no longer interested in negotiating with him. Either argument requires this court to determine the timeliness of his unjust enrichment claim based on appellant's discovery of appellees' intentions.

{¶ 41} The discovery rule, generally applicable to claims for common-law conversion and fraud, can act to toll the statute of limitations. *Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 2009-Ohio-2523. R.C. 2305.09(E) codifies the common-law rule that the time to bring certain actions does not begin to run until the plaintiff discovers, or through the exercise of reasonable diligence should have discovered, a possible cause of action. *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625. Similarly, " '[t]he equitable tolling doctrine extends statutory deadlines in extraordinary circumstances for parties who were prevented from complying with them through no fault or lack of diligence of their own.' " *In re Regency Village Certificate of Need Application*, 10th Dist. No. 11AP-41, 2011-Ohio-5059, quoting *Neves v. Holder*, 613 F.3d 30, 36 (1st Cir.2010). *See also Byers v. Robinson*, 10th Dist. No. 08AP-204, 2008-Ohio-4833, ¶ 66 (trial court did not abuse its discretion by refusing to apply equitable tolling to extend the period for refiling a previously dismissed negligence claim where plaintiffs did not exercise diligence in pursuing the claim). *But see Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St.3d 470, 2006-Ohio-6553, ¶ 52 ("Equitable estoppel precludes recovery when 'one party

induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment.' * * * Generally, actual or constructive fraud is required.").

{¶ 42} This court has previously determined the statute of limitations for an unjust enrichment claim is not subject either to equitable tolling or a discovery rule. *Patel v. Krisjal, L.L.C.*, 10th Dist. No. 12AP-16, 2013-Ohio-1202, ¶ 30, citing *Ignash*, 2002-Ohio-4395. *See also Palm Beach Co.*, 106 Ohio App.3d 167 (refusing to create a discovery rule applicable to unjust enrichment). Accordingly, even when we construe the evidence in appellant's favor, appellant failed to commence his action against appellees within the six-year statutory limitations period.

{¶ 43} On May 5, 2006, appellees executed the definitive agreement, on behalf of IPO, without appellant's prior knowledge or consent. It is undisputed that appellees immediately took possession and control of IPO's assets, including appellant's share in the company, immediately on execution of the definitive agreement. Appellant's September 13, 2019 affidavit dispels any doubt about appellees' procurement of appellant's interest in IPO:

> [IPO] had no customers because the customers were transferred to Defendant Bluemile around the time of the Definitive Agreement.
>
> [IPO] has had no customers since that time. [IPO], though technically alive, has conducted no business activity. It has not serviced clients, which was all of what [IPO] did prior to then.
>
> Since then [IPO] merely had a name and held IP addresses, which were an annual large expense that I paid for. With no customers, those IP addresses were no more than a liability. They sit, now with my company YourColo, LLC (after I transferred them in 2009), unused to this day.

(Aff. of Todd Blank at 1-2, attached as Ex. A to Sept. 13, 2019 Memo. Contra.)

{¶ 44} The undisputed evidence also shows that when appellant learned of the $400,000 offer for his shares in IPO contained in the May 5, 2006 definitive agreement, appellant made a $500,000 counteroffer. The settlement agreement and release purporting to transfer all of IPO's assets was subsequently executed on November 30, 2006.

These facts are not in dispute. Accordingly, the undisputed evidence in the record supports the trial court's determination that appellant's unjust enrichment claim accrued in 2006.

{¶ 45} Appellant has cited several appellate court decisions, including one decision of this court, in support of his contention the trial court erred when it found his cause of action for unjust enrichment accrued in 2006. The first two cases are *Chaplain Kieffer Post 1081 v. Wayne Cty. Veterans Assn.*, 9th Dist. No. 2358 (1988), and *LeCrone*, 2004-Ohio-6526.

{¶ 46} In *Chaplain Kieffer*, Post 1081 deposited proceeds from the sale of real property into a trust account under the name of the Wayne County Veterans Association ("WCVA"). The proceeds were only to be used for the benefit of Post 1081. However, in 1980, WCVA severed its relationship with Post 1081 and it became a separate organization. WCVA continued to hold the proceeds belonging to Post 1081 until 1985, when newly appointed officers of Post 1081 "questioned where the proceeds had gone." *Id.* When WCVA claimed the proceeds as its own, Post 1081 filed a complaint for conversion, unjust enrichment, constructive trust, and punitive damages. WCVA argued the unjust enrichment claim was barred by the six-year statute of limitations, and the trial court agreed.

{¶ 47} On appeal from the trial court's decision granting summary judgment for WCVA, the Ninth District Court of Appeals held the unjust enrichment claim did not accrue until 1985, when WCVA informed Post 1081 that it intended to keep the proceeds for its own use rather than holding them for the benefit of Post 1081. *Id.* Thus, even though the association had possession of the post's assets prior to 1985, the court reasoned the unjust enrichment claim did not accrue until WCVA claimed ownership of the proceeds claim. *Id.*

{¶ 48} In *LeCrone*, the decedent father ("Senior"), purchased land with the intent to hold it for his son ("Junior"). Junior lived there for 20 years and, during that time, paid taxes and installments and made improvements thereon. When Senior passed away, his surviving spouse sought to include the property in the estate. Junior objected and filed an action seeking the imposition of a constructive trust to prevent unjust enrichment to the estate. The surviving spouse argued that the claim accrued more than six years prior to the commencement of the action when Senior purchased the property. The trial court imposed

a constructive trust over real property as an equitable remedy to prevent the estate from being unjustly enriched by the improvements Junior made to the property.

{¶ 49} On appeal, this court held the trial court did not err by imposing a constructive trust because Junior's unjust enrichment claim was timely filed.  In so holding, this court stated:

> A claim for unjust enrichment is subject to a six-year statute of limitations.  R.C. 2305.07.  Such a claim arises when a party retains money or benefits which, in justice and equity, belongs to another.  *Ignash v. First Service Federal Credit Union*, Franklin App. No. 01AP-1326, 2002 Ohio 4395, at ¶ 17, citing *Liberty Mut. Ins. Co. v. Indus. Comm.* (1988), 40 Ohio St.3d 109, 110-111, 532 N.E.2d 124.  The claim accrues on the date when the money or property is wrongly retained.  *Palm Beach Co. v. Dun & Bradstreet, Inc.* (1995), 106 Ohio App.3d 167, 175, 665 N.E.2d 718.  Appellant contends appellees' claim accrued on March 12, 1972, when Senior purchased the property.  We disagree.
>
> Appellees' claim for unjust enrichment did not accrue until Senior wrongfully asserted ownership of the property.  The record indicates that Senior did not assert an ownership interest in the property that was adverse to Junior's interest until December 1998 or January 1999, when Senior allegedly sent Junior a letter increasing the rent and thereafter, served Junior with a notice to leave the premises.  Because appellees asserted their claim for unjust enrichment within six years of when Senior asserted ownership of the property, their claim was not barred by the six-year statute of limitations.

*Id.*, 2004-Ohio-6526, at ¶ 20-21.

{¶ 50} *Chaplain Kieffer* and *LeCrone* stand for the proposition that a claim for unjust enrichment does not accrue until the tortfeasor asserts an interest in the subject property which is adverse to that of the plaintiff.  Here, the undisputed evidence shows that on May 5, 2006, appellees executed the definitive agreement and immediately took control of all the assets in IPO, including appellant's share of those assets.  The undisputed evidence in this case shows appellees did so without appellant's prior knowledge or consent and without making payment to appellant.  Accordingly, *Chaplain Kieffer* and *LeCrone* support the trial court's determination that appellant's claim for unjust enrichment accrued when appellees wrongfully exercised dominion and control of appellant's share of IPO on execution of the definitive agreement.

{¶ 51} The third case cited by appellant is *Desai v. Franklin*, 177 Ohio App.3d 679, 2008-Ohio-3957 (9th Dist.). In that case, Desai and Franklin entered into an employment agreement whereby Desai became an associate in Franklin's Diagnostic Imaging corporation. *Id.* at ¶ 2. Pursuant to the agreement, Desai was to receive a certain percentage of the operating net income as compensation, plus 45 percent of accounts receivable on termination of the agreement after July 1, 1981. When Desai resigned on September 1, 2000, he did not receive the compensation he expected. On January 22, 2002, Desai filed suit against Franklin alleging unjust enrichment, among other claims. The case was tried to a jury, which found Franklin had engaged in unjust enrichment from 1987 until Desai's departure in 2000, and awarded Desai $301,597.34 in damages. *Id.* at ¶ 8.

{¶ 52} On appeal, Franklin argued Desai was entitled to recover only those damages incurred in the six years immediately preceding the date he filed his complaint. *Id.* at ¶ 13. The Ninth District concluded Desai's unjust enrichment claim did not accrue until the last point in time he conferred a benefit on Franklin, which was on the date of his resignation. *Id.* at ¶ 23. Thus, the statute of limitations did not bar Desai from recovering damages from 1987 until 2000. *Id.*

{¶ 53} The *Desai* case is inapposite because it arose out of a continuing employment contract where the timeliness of the complaint was not in dispute. Moreover, the reasoning in *Desai* arguably supports the trial court's judgment as there is no question that appellant's entire interest in IPO was conferred to appellees on execution of the definitive agreement.

{¶ 54} We also disagree with appellant's claim that the date of accrual was delayed by the offer of future payment referenced in the definitive agreement. Even if appellees had tendered payment to appellant in that amount prior to taking control of IPO's assets, appellees' conduct would still be wrongful given the undisputed fact that $400,000 was a much lower value than appellant placed on his shares, as evidenced by his $500,000 counteroffer. On this record, there is no question that the individual harm to appellant as a member of IPO, if any, occurred in 2006, when appellees took control of appellant's share in IPO in contravention of his ownership interest.

{¶ 55} "Statutes of limitations serve several important purposes." *Browne v. Artex Oil Co.*, 158 Ohio St.3d 398, 2019-Ohio-4809, ¶ 32. Such statutes "ensure fairness to the

defendant; encourage prompt prosecution of causes of action; suppress stale and fraudulent claims; and avoid inconveniences caused by delay, including the difficulties of proof in older cases." *Id.,* citing *Doe,* 2006-Ohio-2625, at ¶ 10. Here, appellant waited more than seven years after the execution of the definitive agreement to bring his cause of action against appellees. By that time, appellees had transferred the assets of IPO to WOW. Had appellant timely pursued a claim for unjust enrichment against appellees and concurrently taken steps to preserve his interest in IPO, appellant may have prevented the sale of the assets to WOW. *See Lundeen,* 2015-Ohio-5086, at ¶ 52, citing *Ferguson v. Owens,* 9 Ohio St.3d 223, 226 (1984) ("A constructive trust is, in the main, an appropriate remedy against unjust enrichment."). *See also LeCron*e, 2004-Ohio-6526, at ¶ 11.

{¶ 56} Construing the evidence in appellant's favor and giving appellant the benefit of all reasonable inferences therefrom, we agree with the trial court that R.C. 2305.07 barred appellant's unjust enrichment claim against appellees as a matter of law. Because the trial court did not err when it granted summary judgment in appellees' favor on the unjust enrichment claim, we overrule appellant's second assignment of error.

## V. CONCLUSION

{¶ 57} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and SADLER, JJ., concur.
DORRIAN, P.J., concurs in part and dissents in part.

DORRIAN, P.J., concurring in part and dissenting in part.

{¶ 58} I respectfully concur in part and dissent in part. I concur with the majority's overruling of the second assignment of error. I dissent from the majority's overruling of the first assignment of error as I do not believe it is necessary to address since we have overruled the second assignment of error.

_____