[Cite as *Bridge Health Care Partners, L.L.C. v. LTAH Real Estate Holdings, L.L.C.*, 2022-Ohio-1053.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

### BRIDGE HEALTH CARE PARTNERS, LLC, et al.,

Plaintiffs-Appellees,

v.

### LTAH REAL ESTATE HOLDINGS, LLC, et al.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 JE 0010**

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 20 CV 292

**BEFORE:**
Gene Donofrio, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed in Part and Reversed and Remanded in Part

---

*Atty. Matthew Moberg, Atty. Zachary El-Sawaf, Atty. Jared Klaus*, Porter, Wright, Morris & Arthur LLP, 41 South High Street, Suite 3100, Columbus, Ohio 43215 and *Atty. Costa D. Mastros,* Bank One Building, 401 Market Street, Suite 1210, Steubenville, Ohio 43952 for Plaintiffs-Appellees and

*Atty. Richard J. Parks, Atty. Robert J. D'Anniballe, Jr.*, Pietragallo, Gordon, Alfano, Bosick & Raspanti, LLP., 200 Santon Boulevard, Suite 100, Steubenville, Ohio 43952 for Defendants-Appellants, (LTAH Real Estate Holdings, LLC. and LTAC Investors, LLC), and
*Atty. Zachary A. El-Sawaf, Atty. Costa D. Mastros,* Bank One Building, 401 Market Street, Suite 1210, Steubenville, Ohio 43952, *Atty. Jared M. Klaus, Atty. Matthew E. Moberg,* Porter, Wright, Morris & Arthur LLP, 41 South High Street, Suite 3100, Columbus, Ohio 43215 and *Atty. Joseph Nogay,* Sellitti, Nogay & Nogay, PLLC, 3125 Pennsylvania Avenue, Weirton, West Virginia 26062 for Third Party Defendants-Appellees Bhandari, M.D., et al.

Dated:
March 31, 2022

**Donofrio, J.**

**{¶1}** Appellants/defendants/counterclaim-plaintiffs/third-party plaintiffs LTAH Real Estate Holdings LLC (LTAH) and LTAC Investors (LTAC) (collectively appellants) appeal an April 6, 2021 Jefferson County Common Pleas Court judgment granting a joint motion to dismiss their amended counterclaim and third-party complaint. The joint motion to dismiss was filed by appellees/plaintiffs/counterclaim defendants Bridge Health Care Partners, LLC. (Bridge) and appellees/plaintiffs/third-party defendants Ranjan P. Bhandari, M.D., Paul A. Dibiase, Jr., M.D., Abdullah M. Kalla, M.D., Joseph E. Lewis, M.D., Samuel D. Licata, M.D., Patrick H. Macedonia, M.D., Nicholas P. Mastros, M.D., Cham Nandra, M.D., Patrick G. Rosario, M.D., Rafael Schumlevich, M.D., Satbir Singh, M.D., Shalu Singh, M.D., Vincent Stonebraker, M.D., and Jeffrey B. Wilps, D.P.M (Individuals) (collectively appellees). Appellants contend that the trial court erred by granting the motion to dismiss their amended counterclaim and amended third-party complaint, and by dismissing their affirmative defenses.

**{¶2}** In 2012, First Choice America Community Federal Credit Union (First Choice) loaned $9.5 million to LTAH and its co-members to refinance a prior construction loan with First Choice for the building of a hospital. LTAH is a limited liability company consisting of doctors who invest in medical facilities, with their assets to be held by LTAH. The loan agreement (Agreement) and promissory note (Note) identified each of LTAH's members as co-borrowers and set forth their individual debt amounts based on units of ownership. The Agreement stated that LTAH and the individual co-borrowers were "jointly

Case No. 21 JE 0010

and severally liable, provided, however, that the Individual Borrowers' liability is limited to an amount equal to their 'Units of Ownership in the LLC Borrower.' " The Agreement and Note stated that LTAH had joint and several liability, but LTAH members as co-borrowers were proportionately and severally liable up to their number of shares in LTAH. The Agreement further stated that LTAH leased the facility to LTAC, and First Choice had an open-end mortgage and security agreement. The security for the loan included a first and best lien on the property, an assignment of leases and rents, and a first and best lien on the fixtures on the property. LTAC executed a guaranty agreement.

{¶3} The Agreement identified events of default, including LTAH's failure to pay a monthly installment payment and failure to pay within 15 days of notification by First Choice. It also provided that First Choice could accelerate obligations as immediately due and payable upon default. The Agreement set forth each individual's liability as "[t]he principal amount of debt for which each Individual Borrower has personal liability as set forth next to the Individual Borrower's name" in the Agreement and Note.

{¶4} On May 8, 2019, LTAH's Board of Managers sent a corporate resolution to First Choice indicating its inability to make the loan payments. First Choice accelerated the loan and demanded immediate payment from all borrowers. Some LTAH members thereafter settled their individual co-borrower amounts with First Choice.

{¶5} First Choice filed suit in West Virginia against LTAH and Individuals, who were the LTAH members who did not settle their obligations.

{¶6} On September 4, 2020, Bridge filed a complaint against LTAH for money judgment and foreclosure in the Jefferson County Common Pleas Court, and included LTAC and the Jefferson County Treasurer. Bridge stated that First Choice assigned it the loan and Bridge sent notice of the assignment to LTAH. Bridge alleged that LTAH defaulted on the loan by failing to make payments, even after receiving notice of the default. Bridge alleged that LTAH also failed to pay property taxes.

{¶7} Bridge stated that it demanded payment in full on the loan, and LTAH failed to pay $3,249,931.56, plus interest, attorney fees, and other fees. Bridge noted that LTAC may have an interest in the property based on its lease with LTAH, and the Jefferson County Treasurer may have a claim on the property due to unpaid taxes.

**{¶8}** Bridge moved for foreclosure on the real property and on the security interest in the personal property associated with it, such as fixtures, furnishings, machinery, and equipment. Bridge also noted its entitlement to rents and leases generated by the project through its assignment from First Choice.

**{¶9}** On October 13, 2020, LTAH and LTAC filed an answer, counterclaim, and a third-party complaint. Affirmative defenses in the answer included Bridge's failure to state a claim, harm caused by members and others over which they had no control, the doctrine of unclean hands, and unjust enrichment. In the counterclaim, LTAH and LTAC averred that Individuals are members of Bridge and LTAH and they were defaulting co-borrowers on the loan. They alleged that Individuals created Bridge as a shell company, and rather than satisfy their loan obligation, they conspired to damage the LTAH members who had already paid First Choice. They averred that Bridge and Individuals damaged the settling members by taking assignment of the loan at a discounted sum rather than pay their obligations, which excluded the settling LTAH members from receiving the value of LTAH assets.

**{¶10}** In count one of the counterclaim, LTAC and LTAH requested that the court pierce Bridge's corporate veil. They alleged that Bridge operated merely as an alter ego of its members and was created only to obtain the assignment so that Individuals could avoid paying their loan obligations and unjustly enrich themselves by defrauding LTAH and the settling co-borrowers. In the second count of the counterclaim, LTAH and LTAC alleged that Bridge and Individuals acted contrary to their duties as LTAH members, and Individuals intentionally conspired, concealed, and failed to disclose the assignment and created Bridge to avoid paying their obligations, to gain possession of the loan, and to cause damage to LTAH and those members who paid their shares.

**{¶11}** In their prayer for relief, LTAH and LTAC requested that the court pierce Bridge's corporate veil and order Individuals to reimburse their obligations under the Agreement and Note to LTAH in the amount of $2,938,779.54, plus interest and attorney fees. They also requested punitive damages.

**{¶12}** In their amended counterclaim, LTAH and LTAC added that some LTAH members completely satisfied their obligations on the default to First Choice and 12

others paid their obligations, but the exact sums were unknown. LTAH and LTAC thus modified the request for damages, increasing it to $6,036,458.34.

{¶13} In the third-party complaint against Individuals, LTAH and LTAC averred that Individuals caused LTAH to incur an outstanding balance on the property that would have been owned free and clear had they paid their proportionate shares. In count one, LTAH and LTAC alleged that Individuals conspired to commit fraud by forming Bridge to obtain assignment of the loan in order to avoid obligations under the Agreement and defraud LTAH and its settling members. In count two, LTAH and LTAC alleged that Individuals breached express or implied duties as co-borrowers by acting contrary to the terms of the Agreement. LTAH and LTAC demanded damages of $3,933,017.49, plus attorney fees, costs, and prejudgment and post-judgment interest.

{¶14} In the amended third-party complaint against Individuals, LTAH and LTAC added that had Individuals settled with First Choice in their respective proportions, the loan and Note would be satisfied and paid in full. They added that this failure to settle caused the outstanding balance owed to incur interest, attorney fees, and costs. They modified their damages request to $6,036.458.74 and added a jury demand.

{¶15} On December 7, 2020, Bridge and Individuals filed a joint motion to dismiss the amended counterclaim and third-party complaint under Civ. R. 12(B)(6). They alleged that LTAH and LTAC lacked standing to sue because the basis of their claims was that Bridge and Individuals breached duties to the LTAH members who had paid their obligations under the Agreement and Note. Bridge and Individuals contended that limited liability companies, such as LTAH and LTAC, are considered separate from their members for purposes of standing to sue, and thus the claims alleged by LTAH and LTAC belonged to the settling members, and not to LTAH or LTAC.

{¶16} Bridge and Individuals further asserted that even if they had standing, LTAH and LTAC had no basis to assert that LTAH co-borrowers owed a duty to one another to satisfy their shares of the debt. They submitted that the terms of the Agreement imposed duties on the co-borrowers flowing only to the lender, and only the lender could enforce the obligations. They asserted that the only implied duty between co-borrowers was that of contribution, which was not asserted and would fail because LTAH did not pay off the loan, LTAC was not a party to the loan, and the Agreement imposed only

several, and not joint, liability upon LTAH members. They further contended that no tort action can arise from a contract, unless there is a duty arising independently from the contract, and LTAH and LTAC could not establish a breach of contract action because LTAH failed to fulfill its obligation to pay the loan in full. They also asserted that LTAH asserted damage only to their settling members.

{¶17} As to fraud, Bridge and Individuals asserted that LTAH and LTAC's claims lacked particularity required under Civ. R. 9(B). They asserted that conspiracy to commit fraud failed because a limited liability company is not capable of conspiring with its members as a matter of law. They further argued that piercing the corporate veil is not a cause of action, it is a remedy, and no basis existed to invoke that remedy.

{¶18} LTAH and LTAC filed a brief in opposition to the joint motion to dismiss. They asserted that Bridge's complaint was not a foreclosure action, but was an in personam action on the Note, which is the very action upon which Bridge's members are defaulting obligors and for which they are seeking relief. They contended that they are the real parties in interest under Ohio R.C. 1705.281 relating to fiduciary duties owed by members to a limited liability company and to other members of that company. They also cited to Ohio R.C. 1705.281(D) for Ohio's duty of good faith and fair dealing between parties to a contract.

{¶19} LTAH and LTAC additionally cited Pennsylvania limited liability law[1], pointing out that LTAH is a limited liability company created in Pennsylvania in 2006. They cited 15 Pa. 8493 and caselaw holding that non-managing members of a limited liability company may have duties to each other, such as disclosing transactions, like the sale of an interest in the limited liability company. They noted that Pennsylvania law was similar to Ohio law concerning an implied duty of good faith and fair dealing.

{¶20} They further asserted that their fraud claim met the particularity requirements as they alleged that Bridge and Individuals actively concealed facts and made misrepresentations where they had a duty to disclose based on the parties' relationship of limited liability co-members. They further argued that they met the

---

1    The law in Pennsylvania governing limited liability companies is governed by the Uniform Limited Liability Company Act of 2016. 15 Pa.C.S. 8811-8898.  It was enacted in 2016, but it governs all limited liability companies as of April 1, 2017, regardless when the limited liability company was established.  15 Pa.C.S. 8811(c).

requirements to pierce Bridge's corporate veil because Bridge was created solely to liquidate the interests of LTAH by taking advantage of their own default in payment.

{¶21}  Bridge and Individuals filed a reply brief.

{¶22}  On February 4, 2021, the Jefferson County Court of Common Pleas held a hearing on the joint motion to dismiss and on April 6, 2021, the court issued a judgment entry granting the motion. The court held that LTAH failed to establish standing to sue because the amended counterclaim and third-party complaint were not prosecuted in the name of the real parties in interest, who were the individual members of LTAH who settled with First Choice after the default.  The court also found that LTAC was not a party to the Agreement and Note because it executed only a guaranty agreement, it alleged injury and fraud only to LTAH and its members, and it requested that damages be awarded only to LTAH.

{¶23}  The court further held that LTAH was not a real party in interest because even though it held title to the real estate, it asserted damage only to its members and not to the company itself. The court found that LTAH did not pay off the debt that it owed to First Choice and LTAH was separate from its members under Ohio and Pennsylvania law.  The court further held that LTAH caused its own injury by defaulting on the loan and this occurred before Bridge was even created, so that any alleged damage to LTAH members was not fairly traceable to wrongdoing by Bridge or Individuals.

{¶24}  The court also held that it would not consider the claims that LTAH and LTAC raised for the first time in their response to the joint motion to dismiss, which were claims of breach of fiduciary duty and breach of the contractual duty of good faith and fair dealing. However, the court nevertheless proceeded to discuss these claims and held that they would fail as a matter of law.  The court considered choice of law issues in determining whether Ohio, West Virginia, and/or Pennsylvania law applied to the claims. It looked at Pennsylvania law to determine whether Bridge members owed fiduciary duties to LTAH and its members and whether there was a duty of good faith and fair dealing. The court found that Pennsylvania law applied since LTAH is a Pennsylvania company and its operating agreement stated that Pennsylvania law applied in interpreting and enforcing the agreement. The court noted that the operating agreement also provided that the Pennsylvania Uniform Limited Liability Act of 2016 applied to the new claims since

they concerned duties of members of LTAH to other LTAH members and to LTAH. The court quoted Pa.C.S. 8849(I), which provided that a member of a manager-managed LLC does not have any duty to the company or any other members simply by being or acting as a member of the LLC.

{¶25} The court further pointed out that LTAH and LTAC had conceded that good faith and fair dealing was not a stand-alone claim, and that it must be asserted in conjunction with a breach of contract claim per caselaw and 15 Pa.C.S. 8849.1(d). The court found that the good faith and fair dealing claim must be derived from either the LTAH operating agreement or the Agreement with First Choice since they were the only contracts that were binding on LTAH members.

{¶26} In reviewing the Agreement, the court found that it specifically referred to the application of West Virginia law for its construction and enforcement. The court found that the clear and unambiguous language of the Agreement and Note imposed obligations upon each of the co-borrowers in favor of First Choice up to each individual's personal liability limit, and imposed no obligations between or among co-borrowers. As to the LTAH operating agreement, the court noted that the comments to 15 Pa.C.S. 8849.1(d) provided that the requirement of good faith and fair dealing did not prevent a member from acting in the member's own self-interest.

{¶27} The court also found that no implied duty existed between members of LTAH under Pennsylvania law because no fiduciary duty exists between members of a manager-managed LLC. Thus, the court held that any duty beyond good faith and fair dealing in conjunction with a contract obligation did not exist, as well as claims of fraud and complicity to commit fraud as alleged by LTAH and LTAC. The court found that the conspiracy to commit fraud claim merely restated the breach of contract claim and no tort claim could be brought for breach of contract.

{¶28} The court's last reason for finding that LTAH lacked standing was because the LTAH operating agreement required that disputes arising under the agreement had to be submitted to arbitration in Allegheny County, Pennsylvania.

{¶29} The court concluded that based upon its dismissal of LTAH's claims, LTAH's affirmative defenses raised in its answer were not legally valid and were not viable defenses to prevent foreclosure.

{¶30} On April 30, 2021, LTAH and LTAC filed a notice of appeal in this Court, raising the following sole assignment of error with five sub-issues:

> THE TRIAL COURT ERRED WHEN IT GRANTED THE APPELLEES' JOINT MOTION TO DISMISS APPELLANTS' AMENDED COUNTERCLAIM AND AMENDED THIRD-PARTY COMPLAINT AND AFFIRMATIVE DEFENSES.
>
> 1. Where Appellants[sic-Appellee Bridge] bring[s] an In Personam action by their Complaint for Money Judgment and Foreclosure, Appellants are permitted to assert defenses, counterclaim, and a Third-Party Complaint as the action is not merely a "foreclosure proceeding."
> 2. Where an owner of property is an[sic.] injured by [a] party in an In Personam action against its property, the injured owner of said property has standing and is entitled to present a defense to the action on the Note and its property.
> 3. Where the Court has made a 12(B)(6) ruling against Appellant findings a lack of standing all subsequent findings are superfluous and an error or law.
> 4. Where the language of contract documents is not clear and unambiguous, the Trial Court's findings in favor of the moving Party in deciding a Motion to Dismiss regarding intent are improper as a matter of law.
> 5. Where the express provisions of the Note and other Loan Documents proscribe that all contractual interpretation is to be construed under West Virginia Law, reliance on Pennsylvania law and failing to consider West Virginia duties is improper.

Upon appeal of this judgment entry to this Court, the court issued a stay of

execution on June 22, 2021. However, the trial court thereafter issued a judgment entry indicating that the case had inadvertently been stayed and no stay had actually been issued.

{¶31} In order to dismiss a complaint under Civ.R. 12(B)(6) for failure to state a claim, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to relief. *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St. 3d 416, 2002–Ohio–2480, 768 N.E.2d 1136 ¶ 5 citing *O'Brien v. Univ. Community Tenants Union,* Inc., 42 Ohio St. 2d 242, 327 N.E.2d 753 (1975). The reviewing court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party. *Id.* citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St. 3d 190, 192, 532 N.E.2d 753 (1988). Furthermore, as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss. *Id. citing York v. Ohio State Hwy. Patrol*, 60 Ohio St. 3d 143, 144, 573 N.E.2d 1063 (1991).

{¶32} Here, the trial court granted the joint motion by Bridge and Individuals to dismiss the amended counterclaim against Bridge and the amended third-party complaint against Individuals. The court held that LTAH and LTAC failed to state claims under Civ. R. 12(B)(6) because neither established standing to sue under Civ. R. 17(A). The court ruled that the amended counterclaim and third-party complaint were "not prosecuted in the name of the real party in interest (the separate and distinct, individual members of LTAH, LLC and LTAC, LLC.)". The court explained that neither LTAH nor LTAC is a real party in interest "who is directly benefitted or injured by the outcome of the case."

{¶33} In its assignment of error, LTAH and LTAC do not thoroughly address the general issue of whether the trial court erred by granting the joint motion to dismiss the amended counterclaim and third-party complaint. Rather, they proceed into the five sub-issues, each with its own contention and reasoning. We address each in turn.

{¶34} In sub-issue number one, appellants assert:

Where Appellants[sic-Appellee Bridge] bring[s] an In Personam action by their Complaint for Money Judgment and Foreclosure, Appellants are permitted to assert defenses, counterclaim, and a Third-Party Complaint as the action is not merely a "foreclosure proceeding."

{¶35} LTAH and LTAC assert that the trial court erred by considering Bridge's complaint solely as an in rem commercial foreclosure action. They note that the first count in Bridge's complaint is for judgment on the Note and count three seeks recovery of personal property, which are both in personam. They quote the trial court's findings to support the assertion that the court considered the action solely as one in foreclosure:

…the Affirmative Defenses raised in Defendants' Amended Answer do not constitute valid legal defenses to this foreclosure proceeding.

\* \* \*

The Court further finds that, although Defendant, LTAH, filed an Amended Answer containing four Affirmative Defenses, (Failure to State Claim, Loss Caused by Conduct of Plaintiffs Members & Third Persons, Doctrine of Unclean Hands and Reservation of Rights), said defenses do not constitute valid affirmative defenses to the allegations of this Foreclosure action as a result of the Court's dismissal of Defendants' Counterclaim and Third-Party Complaint.

(Emphasis added by appellants).

{¶36} This sub-issue is without merit. When a mortgagor defaults, the mortgagee "has three separate and independent remedies that it may pursue in an attempt to collect the debt secured by the mortgage: a personal judgment against the mortgagor to obtain the amount owing on the promissory note; an action in ejectment based on the mortgage; and an action in foreclosure based upon the mortgage." *Deutsche Bank Natl. Trust Co.*

*v. Holden*, 147 Ohio St.3d 85, 2016-Ohio-4603, 60 N.E.3d 1243, ¶ 22-24. To recover on the promissory note, the mortgagee files an action for personal judgment, or an in personam action, on the note that was secured by the mortgage. *U.S. Bank Natl. Assn. v. Robinson*, 8th Dist. Cuyahoga No. 105067, 2017-Ohio-5585, 2017 WL 2817596, ¶ 7. A cause of action for foreclosure is an action in rem, or on the property, because the mortgagee is pursuing an interest in the property as the property was offered as security for a debt. *Holden* at ¶ 22-24.

**{¶37}** We find that Bridge's complaint is primarily one in foreclosure. It is captioned "Complaint for Money Judgment and Foreclosure," and includes a count specifying an amount for judgment on the promissory note and another for entitlement to leases and rents. However, Bridge's prayer for relief requests foreclosure remedies, such as a legal determination of the existence of a mortgage lien, the extent of the lien, that the equity of redemption be foreclosed, and that the property be sold, with Bridge receiving its amount due on the Note and loan, plus fees and costs. Moreover, even if Bridge's complaint requests both foreclosure and an actual personal money judgment, the Ohio Supreme Court has held that they may properly be joined in one action. *Carr v. Home Owners Loan Corp.*, 148 Ohio St. 533, 540, 76 N.E.2d 389 (1947).

**{¶38}** Accordingly, appellants' sub-issue number one is without merit.

**{¶39}** In sub-issue number two, appellants assert:

> Where an owner of property is an[sic.] injured by [a] party in an In Personam action against its property, the injured owner of said property has standing and is entitled to present a defense to the action on the Note and its property.

**{¶40}** Appellants again assert that Bridge's complaint is an in personam action and they challenge the court's finding that LTAH lacked standing to sue because it alleged harm only to its settling members. LTAH asserts that a limited liability company is a legal person and owns its property. It contends that it has standing because it alleged that Individuals formed Bridge as a shell company to defraud LTAH and divest it of its value, purpose, and assets, distributing its equity only to Bridge. LTAH asserts that the trial court acknowledged that LTAH suffered direct harm when it found that: "It is apparent that the

only purpose for the continuation of the existence of LTAH, as a legal entity, is to allow for an orderly distribution of property to its members after all debts are paid [.]" (Apr. 6, 2021 Findings of Court at 13). LTAH concludes that "[a]s the remedies sought directly relate to LTAH as a legal person having a right to the benefit of all its property for all its members, LTAH is a real party in interest and has standing to bring its asserted claims."

{¶41} The standard of review for issues of standing is de novo, as it is usually a question of law. *Sutherland v. Gaylor*, 10th Dist. Franklin, No. 20AP-257, 2021-Ohio-194, ¶ 18, quoting *Wilkins v. Harrisburg*, 10th Dist. No. 14AP-1028, 2015-Ohio-5472, ¶ 7, and citing *LULAC v. Kasich*, 10th Dist. No. 10AP-639, 2012-Ohio-947, ¶ 23; *see also Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶ 21-22.

{¶42} "Standing" is defined as "'[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.' " *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27, quoting Black's Law Dictionary 1442 (8th Ed.2004). Standing is that which determines " 'whether a litigant is entitled to have a court determine the merits of the issues presented.' " *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 20, quoting *State ex rel. Teamsters Local Union No. 436 v. Cuyahoga Cty. Bd. of Commrs.,* 132 Ohio St.3d 47, 2012-Ohio-1861, 969 N.E.2d 224, ¶ 10 (quoting *Ohio Contrs. Assn. v. Bicking*, 71 Ohio St.3d 318, 320, 643 N.E.2d 1088 (1994).

{¶43} "Standing does not depend on the merits of the plaintiff's claim. [citation omitted]. Rather, standing depends on whether the plaintiffs have alleged such a personal stake in the outcome of the controversy that they are entitled to have a court hear their case." *ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, 13 N.E.3d 1101, quoting *Clifton v. Blanchester*, 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414, ¶ 15; *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas*, 35 Ohio St.2d 176, 178–179, 298 N.E.2d 515 (1973). In order to establish standing, a plaintiff must show: "(1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief." *Gaylor* at ¶ 18.

{¶44} The real party in interest rule addressed in Civ.R. 17(A) does not address standing, although the legal concepts are similar. *Abroms v. Synergy Bldg. Sys.*, 2d Dist. Montgomery No. 23944, 2011-Ohio-2180, ¶ 46; *Schwartzwald* at ¶ 33. "Indeed, one who

Case No. 21 JE 0010

has standing by possessing a 'personal stake' in a lawsuit undoubtedly also has a 'real interest in the subject matter of the litigation.' " *Abroms* at ¶ 46. Before a court can address the merits of a claim, a party must have standing to sue. *Blank v. Bluemile, Inc.*, 10th Dist. Franklin No. 20AP-200, 2021-Ohio-2002, ¶ 17, 174 N.E.3d 859, 865, appeal not allowed, 2021-Ohio-3594, ¶ 17, 164 Ohio St. 3d 1461 (citing *Torrance v. Rom*, 8th Dist. Cuyahoga, 2020-Ohio-3971, 157 N.E.3d 172, ¶ 23, citing *Ohio Contrs. Assn. v. Bicking*, 71 Ohio St.3d 318, 320, 643 N.E.2d 1088 (1994)).

**{¶45}** A limited liability company is a separate entity from its members and is capable of suing and of being sued. *Torrance* ¶ 23, citing *Trickett v. Masi*, 11th Dist. Portage No. 2018-P-0006, 2018-Ohio-4270, 2018 WL 5257914, ¶ 19, citing *Disciplinary Counsel v. Kafele*, 108 Ohio St.3d 283, 2006-Ohio-904, 843 N.E.2d 169, ¶ 18; *Cleveland Bar Assn. v. Pearlman*, 106 Ohio St.3d 136, 2005-Ohio-4107, 832 N.E.2d 1193, ¶ 36 (O'Donnell, J., dissenting); *Ogle v. Hocking Cty.*, 4th Dist. Hocking No. 14CA3, 2014-Ohio-5422, 2014 WL 6977628, ¶ 25. Since "a limited liability company is distinct from its members, an individual member of a limited liability company lacks standing to assert claims individually where the cause of action belongs to the company." *Bluemile*, 10th Dist. Franklin No. 20AP-200, 2021-Ohio-2002, ¶ 19, 174 N.E.3d 859, 865, appeal not allowed, 2021-Ohio-3594, ¶ 17, 164 Ohio St. 3d 1461 (citing *TD Ltd., LLC v. Dudley*, 12th Dist. Butler No. CA2014-01-009, 2014-Ohio-3996, 2014 WL 4534927, ¶ 16, fn. 2. It follows that since a limited liability company is separate from its members, and members of a limited liability company lack standing to sue for injuries sustained by the company, the company lacks standing to sue for injuries sustained by its individual members. *See Torrance* ¶ 39-40.

**{¶46}** Accordingly, we find that the trial court properly held that LTAC lacked standing to sue because it failed to allege that it was defrauded or injured, and it did not demand its own relief. In its amended counterclaim, LTAC alleged that Bridge defrauded LTAH and its settling members, Individuals were directly liable to LTAH, and LTAH was injured or damaged. LTAC made no allegations on its own behalf. For these reasons, we find that it was proper for the trial court to grant appellants' joint motion to dismiss LTAC's amended counterclaim and third-party complaint.

Case No. 21 JE 0010

{¶47} As to LTAH, we find that the trial court erred by finding that LTAH failed to assert claims or damages beyond those of its settling members. While it did assert such claims, LTAH sufficiently asserted its own claims against both Bridge and Individuals. For instance, in its amended counterclaim, LTAH asserts that:

> 34. Plaintiff members, who are also Borrowers under the Loan Agreement * * * have refused to satisfy their obligations under the Loan Agreement and Note and instead formed a shell company and conspired to cause the non-defaulting LTAH members to be damaged by their intentional default under the Loan Agreement by taking an assignment of the Loan Agreement at a discounted sum rather than pay their obligations as borrowers under the Loan Agreement which is conduct specially intended to damage LTAH and exclude non-defaulting members from the value of the LTAH assets so as to and to unjustly enrich themselves.

{¶48} LTAH further asserts that:

> 47. Plaintiff was formed with the intention of obtaining possession of the Loan Agreement and Note, in order to avoid paying their own defaulting members' obligations under the Loan Agreement to the Original Lender, and to defraud LTAH and the settling Co-Borrowers by seeking a foreclosure of the Loan they themselves willfully breached.

{¶49} LTAH also requested that the court pierce Bridge's corporate veil and hold Individuals directly liable to LTAH. It further requested that Individuals reimburse their personal obligations to LTAH under the Agreement and Note and pay punitive damages, attorney fees, and consequential damages.

{¶50} LTAH also sufficiently alleged its own claims and damages against Individuals in its amended third-party complaint. LTAH asserted that had Individuals settled their obligations in the Agreement, the loan would have been satisfied and LTAH would own the real estate. LTAH also asserted that since the loan was not paid in full, it

incurred interest, costs, and attorney fees, which increased its debt amount. LTAH alleged that Individuals breached their duty to LTAH by conspiring to refuse to pay these obligations, created Bridge to obtain assignment of the loan, and then foreclosed even though they were the ones that defaulted. LTAH also alleged that Bridge and Individuals knew or should have known that this was contrary to their member duties and knew that this would damage LTAH's assets.

**{¶51}** Since LTAH sufficiently alleged its own claims and damages against Bridge and Individuals, we find that the trial court erred when it held that LTAH lacked standing to sue for this reason.

**{¶52}** However, two sentences that the trial court added in its findings support its determination that LTAH lacked standing to sue. In holding that LTAH lacked standing to sue, the trial court also found:

> In accord with the applicable substantive Ohio law pertaining to the issue of standing in this jurisdiction, this Court finds that even though LTAH, "may, in some way, be adversely impacted by this foreclosure proceedings[sic], (real estate sold at Sheriff's sale), LTAH's alleged anticipated injury, traceable only to its own admitted default of payment under the Term Loan Agreement, which default occurred prior to Bridge's purchase of the loan, is not an injury 'fairly traceable' to any alleged wrongdoing by Bridge or Third Party Defendants, as required by law. Rather, it is readily apparent, from the face of Defendants' Pleadings that LTAH's members were allegedly damaged when they paid to settle their debts to First Choice, and that, therefore, LTAH is not a party possessing the substantive right to relief. *Myers v. Evergreen Land Dev. Ltd.,* 7th Dist. [Mahoning] No. 07 MA 123, 2008-Ohio-1062 ¶ 14. [discussing real party in interest].

**{¶53}** Bridge and Individuals contend that in this section, the court correctly found that LTAH lacked standing because LTAH's injury is not fairly traceable to Bridge and Individuals. They assert that the anticipated foreclosure or injury resulted from

LTAH's own failure to pay the loan and its default, which occurred before Bridge was created or before First Choice assigned the loan to Bridge.

**{¶54}**  LTAH did default on the loan before Bridge was created. LTAH's board of managers sent First Choice the corporate resolution indicating its inability to pay on May 8, 2019. First Choice then issued a notice of default and accelerated the unpaid balance of the loan. LTAH did not make any payment. A number of individual members of LTAH then settled their personal obligations as co-borrowers between June and September 2019. First Choice filed a lawsuit in West Virginia against LTAH and the other co-borrowers in July 2019. Individuals did not form Bridge until February 2020 and secured the assignment from First Choice thereafter. Thus, LTAH failed to pay on its loan obligation, which caused its injury. Thus, LTAH's loss is not traceable to alleged wrongdoing by Bridge or Individuals, but resulted from its own failure to pay.

**{¶55}**  LTAH seeks to pierce Bridge's corporate veil and alleges fraud in its amended counterclaim. It also sues Individuals for conspiracy to commit fraud and breach of their express/implied duty as co-borrowers to the Agreement and Note. However, LTAH cannot escape the fact that it failed to pay and defaulted on its loan obligation well before Bridge was created, before First Choice assigned the loan to Bridge, and before some of its members settled with First Choice. Thus, while the trial court erred by finding that LTAH lacked standing to sue Bridge and Individuals due to LTAH's failure to allege its own damages, the court correctly held that LTAH lacked standing to sue because LTAH could not trace its damages to any alleged wrongdoing by Bridge or Individuals. LTAH's default on the loan to First Choice negates a finding that LTAH could show that its injury was fairly traceable to any wrongdoing by Bridge or Individuals.  Accordingly, we find that the trial court correctly found that LTAH lacked standing to sue Bridge and Individuals.

**{¶56}**  We point out that the trial court dismissed all of LTAH's affirmative defenses in addition to dismissing LTAH's counterclaim. Appellees did not request this in their joint motion to dismiss. Further, in doing so, the trial court merely stated that the defenses "do not constitute affirmative defenses to the allegations of this Foreclosure action as a result of the Court's dismissal of Defendant's Counterclaim and Third-Party Complaint." LTAH's five affirmative defenses asserted were: failure to state a claim upon which relief may be granted; Bridge and Individuals' loss may have been solely or partially caused by the

conduct of Bridge and Individuals, or other third parties over which they had no control; the doctrines of unclean hands and unjust enrichment; and reservation of additional affirmative defenses.

**{¶57}** We find that the trial court provides insufficient reasoning to support the dismissal of LTAH's affirmative defenses. Without sufficient explanation by the trial court, this Court is hard-pressed to hold that LTAH is foreclosed from presenting any affirmative defenses to the complaint. Accordingly, we find that the trial court erred by dismissing the affirmative defenses.

**{¶58}** In its third sub-issue, LTAH and LTAC assert:

Where the Court has made a 12(B)(6) ruling against Appellant finding a lack of standing all subsequent findings are superfluous and an error of law.

In sub-issue number four, appellants assert:

Where the language of contract documents is not clear and unambiguous, the Trial Court's findings in favor of the moving Party in deciding a Motion to Dismiss regarding intent are improper as a matter of law.

In sub-issue number five, appellants assert:

Where the express provisions of the Note and other Loan Documents proscribe that all contractual interpretation is to be construed under West Virginia Law, reliance on Pennsylvania law and failing to consider West Virginia duties is improper.

**{¶59}** In sub-issue number three, appellants contend that the trial court erred by addressing any further claims after it held that they lacked standing to sue and dismissed their claims under Civ. R. 12(b)(6). They assert that the decision on standing was dispositive and the trial court did not then need to consider the merits of the additional claims. Appellees agree with appellants' assertion.

Case No. 21 JE 0010

**{¶60}** This Court agrees as well. Standing is required before a court can consider the merits of a legal claim. *Ohio Contrs. Assn. v. Bicking*, 71 Ohio St.3d 318, 320, 643 N.E.2d 1088 (1994). Since the trial court found that LTAH and LTAC lacked standing to sue and we affirm that holding, the trial court's subsequent findings and holdings are rendered moot. Thus, we find merit to appellant's third sub-issue, and decline to address appellants' sub-issues four and five because they are moot.

**{¶61}** For the above reasons, we affirm in part and reverse and remand in part the trial court's judgment. We affirm the trial court's judgment dismissing appellants' counterclaim and third-party complaint. However, we reverse the trial court's dismissal of appellants' affirmative defenses and remand this matter for further proceedings according to the law and consistent with this Court's opinion.

Robb, J., concurs.

D'Apolito, J., concurs.

———————————————

For the reasons stated in the Opinion rendered herein, the assignment of error is sustained in part and overruled in part and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed in part and reversed and remanded in part. We affirm the trial court's judgment dismissing appellants' counterclaim and third-party complaint. However, we reverse the trial court's dismissal of appellants' affirmative defenses and remand this matter for further proceedings according to the law and consistent with this Court's opinion. Costs to be taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**